UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK CRABTREE,<br><br>               Plaintiff,<br><br>v.<br><br>WENDY GEPHART, DARCELL STAMMER, and JASON LICHTI,<br><br>               Defendants. | Case No. 3:11-cv-00062-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Now pending is Defendants' Motion for Summary Judgment. (Dkt. 24.) All parties appearing before the Court have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 20.) Fed. R. Civ. P. 72.

      Defendants assert entitlement to summary judgment under Rule 56 on the merits of Plaintiff's claims. They also assert that Plaintiff's claims are subject to dismissal for his failure to exhaust administrative remedies, which the Court will treat as an unenumerated Rule 12b motion. (Dkt. 24.) Plaintiff did not file a response to Defendants' Motion by his deadline of March 19, 2012. Therefore, the Court will decide the pending motion on the record before it. After reviewing Plaintiff's Complaint, Defendants' Motion and

**MEMORANDUM DECISION AND ORDER - 1**

supporting evidence, and the record in this matter, the Court will grant Defendants' motion on the threshold issue of failure to exhaust, for the following reasons.

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC). His claims arise from his incarceration at the Idaho Correctional Institution in Orofino (ICI-O). (Complaint, Dkt. 3). Plaintiff was designated a sexual predator due to his institutional behavior. However, that designation had recently been removed, which allowed Plaintiff to be moved into the protective custody unit at ICI-O. (Defendants' Statement of Facts (SOF) ¶ 15.) Defendant Stammer was Plaintiff's assigned case worker (SOF ¶ 5); Defendant Gebhart (referred to as "Gephart" by Plaintiff) was his clinician (id.); and Corporal Lichti was the IDOC official who sat in on sexual assault interviews conducted by the Clearwater County Sheriff's Office after Plaintiff reported that his cellmate sexually abused and raped him. (SOF ¶ 23.)

When Plaintiff was transferred to ICI-O, Defendants Stammer and Gebhart met about Plaintiff's residential placement to ensure that his housing was appropriate. Plaintiff was told that he had been designated a sexual predator, but that label was removed to permit him to be housed in protective custody. (SOF ¶ 15.) However, the Plaintiff was also told he was expected to refrain from engaging in sexual activity in prison. (Id.) During the time at issue, Plaintiff was being transitioned from administrative segregation, to protective custody and then to general population with the goal of placing him into sex offender treatment, a pre-requisite to parole. (SOF ¶¶ 6-7.)

**MEMORANDUM DECISION AND ORDER - 2**

Defendants contend that Defendant Gebhart met with Plaintiff in December 2010, at which time Plaintiff told Gebhart for the first time that a fellow inmate named Barber had hit him, called him names, and bossed him around. (SOF ¶ 19.) The Plaintiff also said that Inmate Barber had forced him into sexual activity. (Id.) Defendant Gebhart immediately reported Plaintiff's allegations of having been sexually assaulted to the shift commander, who contacted the Clearwater County Sheriff's office. (SOF ¶ 19, 20.) However, during the Clearwater County Sheriff's office investigation, Plaintiff admitted that he had asked Inmate Barber to engage in sexual activity. (SOF ¶ 28.)

Plaintiff's allegations in the Complaint are somewhat different. He alleges that, when he reported the sexual assault to Defendant Gephart, she refused to believe him. (Complaint, Dkt. 3.) Plaintiff alleges that Defendants Gephart and Stammer threatened him with the possibility of relocating him to "facilities where I'd be in severe danger for my life" if he did not state that the sexual activity was consensual. (Id.) According to Plaintiff, Defendants harassed him by telling him he was a liar and told him that "if I didn't change my story," they would place Plaintiff in the prison's general population. (Id.) Plaintiff claims that because of the pressure from Defendants and in fear for his own safety, he then falsely stated that he had requested sexual favors from Inmate Barber. (Id.) Plaintiff says that after he made that statement, he was issued a Disciplinary Offense Report (DOR) for sexual harassment, which he claims was an attempt to cover-up the inaction of prison officials. (Id.)

**MEMORANDUM DECISION AND ORDER - 3**

At Plaintiff's DOR hearing, Defendant Lichti and a nondefendant officer informed Plaintiff on the record that he could appeal the DOR finding. (Id.) However, Plaintiff claims that once the tape recorder at the hearing was turned off, the officers told him that he could not appeal and suggested that he would be sent back to the Idaho Maximum Security Institution if he made trouble for everyone. (Id.)

This Court's Order dated May 19, 2011 permitted Plaintiff to proceed with First and Eighth Amendment claims against Defendants Gephart, Stammer, and Lichti only. (Dkt. 9.) The Court now addresses whether Plaintiff exhausted his administrative remedies in regard to the factual basis for those claims, which he would be required to do as a general matter before bringing such claims in a lawsuit.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**1.     Standard of Law**

Under federal law, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Where an inmate seeks money damages for a prison conditions claim, he or she must complete the prison administrative process for the claims, even if the process does not provide for money damages. *Booth v. Churner*, 532 U.S. 731 (2001). The prison administrative process is a sufficient remedy if it "could provide some sort of relief on the complaint." *Id.* at 734. In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court confirmed that "the PLRA's exhaustion requirement

**MEMORANDUM DECISION AND ORDER - 4**

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement allows "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Under the PLRA, *proper* exhaustion is also required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

With such a means of redress available, if the inmate fails to exhaust his administrative remedies, his claim is subject to dismissal without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). Importantly, an inmate must exhaust his remedies *prior* to filing suit; exhaustion cannot be accomplished during a suit or after a suit has been filed. *See McKinney v. Carey,* 311 F.3d 1198 (2002) (suit dismissed without prejudice where prisoner attempted to exhaust administrative remedies during pendency of suit).

**MEMORANDUM DECISION AND ORDER - 5**

The defense of "failure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988). A defendant may raise the exhaustion defense early in the case, on an incomplete record, via an unenumerated Rule 12(b) motion "as a matter of abatement." *Wyatt*, 316 F.3d at 1119; *Payne v. Peninsula School Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (discussing unenumerated Rule 12(b) motions in the context of the IDEA).

To resolve a Rule 12(b) motion raising failure-to-exhaust issues, "the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 316 F.3d at 1119-20. In such instances, the court "has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza*, 837 F.2d at 369. However, the court "must assure that [the petitioner] has [had] fair notice of his opportunity to develop the record." *Wyatt*, 316 F.3d at 1120 n.14.

Distinguishing unenumerated 12(b) motions from motions specifically brought under Rules 12(b)(6) and 56, the *Ritza* Court further explained that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of [the] claims." 837 F.2d at 369 (internal citations and punctuation omitted).  Even so, because failure to exhaust is an affirmative defense, a defendant bears the burden of persuasion. *Wyatt*, 315 F.3d at 1119.

**MEMORANDUM DECISION AND ORDER - 6**

**2.     Administrative remedies in this case – the IDOC's Grievance Procedure**

The Idaho Department of Correction uses a three-step administrative review process to address prisoner complaints about their conditions of confinement. (Affidavit of Coleen Reed, Dkt. 24-5, at 1-2).[1] The prisoner must first submit an inmate concern form, then a grievance, and then an appeal of any adverse decision. (Id.)

The prisoner begins this process by routing the offender concern form to the staff member most capable of addressing the problem. (Id. at 2-3.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 30 days of the incident. (Id.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and how the offender has been adversely affected. (Id.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (Id. at 4.)

After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually "the facility head," who reviews the prisoner's complaint and the staff member's response and issues a decision. (Id.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (Id.) Once the appellate

---

[1]     Colleen Reed is the "Grievance Coordinator" in the ICI-O prison.

**MEMORANDUM DECISION AND ORDER - 7**

authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (Id.)

**3.     Discussion**

Defendants contend that Plaintiff did not initiate, or complete, the grievance procedure for his claims that Defendants Gephart, Stammer, and Lichti violated Plaintiff's First and Eighth Amendment claims by harassing him and retaliating against him about reporting the sexual abuse perpetrated by Inmate Barber. To meet their initial burden, Defendants rely upon the Reed Affidavit. Reed states that she reviewed institutional records for grievances submitted by Plaintiff between December 1, 2010, and February 24, 2012. (Dkt. 24-5 at 4.) During that time, Reed states that Plaintiff never initiated the grievance process with respect to complaints against Defendants Gebhart, Stammer or Lichti. (Id.)

In his Complaint, Plaintiff alleges:

> I did not file an appeal on the Grievance because the Hearing officers (Cpl. Lichti and Sgt. Brewer) made me believe I would get into further trouble or be charged with criminal actions. So out of fear, I did what they told me not to do; I didn't file an Appeal.

(Complaint, Dkt. 3, p. 7.) Plaintiff also alleges that he has "a mental illness," is "borderline mentally retarded," and is "bipolar." (*Id.*, p. 12.)

There is no record that Plaintiff ever filed a grievance. Rather, it seems that Plaintiff has mixed up the DOR process (regarding disciplinary action taken against

**MEMORANDUM DECISION AND ORDER - 8**

inmates) with the grievance process (regarding inmates' right to complain about prison conditions or about prison employees treating inmates badly).

Defendants contend that the DOR process and the grievance process are separate and different, and that completion of one does not equal completion of the other for administrative exhaustion purposes under 42 U.S.C. § 1997(e)(a).

The Court agrees. Plaintiff has not come forward with any statement under oath explaining whether, outside of the DOR process, Plaintiff believed that he could not file a grievance. In addition, there is no evidence that Plaintiff's alleged mental illness difficulties prevented him from filing a grievance. To the contrary, Defendants have provided evidence that Plaintiff used the grievance procedures in January and February 2011, when he complained that he should have been able to send out indigent mail that weighed more than the allowed amount per each indigent envelope. (Dkt. 24-5.)

Finally, the Court finds that Plaintiff's credibility is tarnished by his contention that Gebhart did not believe that Plaintiff was sexually assaulted by Inmate Barber, when, in fact, the record shows that, as soon as Plaintiff reported sexual abuse to Gebhart, she immediately reported it to prison officials, who, in turn, immediately reported it to the Sheriff's office for an independent investigation. Regardless of Gebhart's subjective belief as to Plaintiff's credibility, as to which there is only Plaintiff's speculative assumption, Plaintiff admits that she took immediate steps to report the allegations to appropriate persons within the institution.

**MEMORANDUM DECISION AND ORDER - 9**

The Court is satisfied that Defendants have placed sufficient evidence in the record to show that Plaintiff failed to exhaust his administrative remedies. Prison officials regularly monitored Plaintiff's housing, and responded to his report of sexual abuse by his cellmate. Against that evidence, the allegations in Plaintiff's Complaint that prison officials tried to thwart his attempt to file a DOR appeal are insufficient to show that (1) the threats occurred, (2) the threats related to a grievance, and (3) Plaintiff was too frightened to file a grievance. Defendants have also shown that Plaintiff knew how to use, and did use, the grievance process during the time period at issue because he has filed other grievances on unrelated matters. Therefore, Plaintiff did not exhaust his administrative remedies, he is without an adequate justification for his failure, and the Court will dismiss the Complaint without prejudice.

Because the Court is dismissing the Complaint on procedural grounds, based on a failure to exhaust, it does not reach Defendants' alternative argument that there are no genuine disputes as to any material fact regarding whether Defendants retaliated against Plaintiff.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 24) is GRANTED.

2. Plaintiff's Complaint (Dkt. 3) is DISMISSED without prejudice.

**MEMORANDUM DECISION AND ORDER - 10**

DATED:  **April 11, 2012**



_/s/ Ronald E. Bush_

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 11**